UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLOBAL LIAISON CONSULTING INC.,

    Plaintiff,

v.                                                                                           Case No: 6:17-cv-121-Orl-40KRS

SEVO SYSTEMS, INC. and FIRE FLUID TECHNOLOGIES, INC.,

    Defendants.

## ORDER

This cause comes before the Court without oral argument on Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer and Memorandum in Support (Doc. 5), filed February 1, 2017. On February 15, 2017, Plaintiff responded in opposition. (Doc. 10). Upon consideration, the Court will grant in part and deny in part Defendants' motions.

**I.   BACKGROUND**

This lawsuit arises out of a business dispute between Plaintiff, Global Liaison Consulting, Inc. ("GLC"), and Defendants, SEVO Systems, Inc. ("SEVO") and Fire Fluid Technologies, Inc. ("FFT"). SEVO and FFT manufacture and sell fire fluid equipment and design fire protection systems. On August 8, 2006, SEVO entered into a distributorship agreement (the "Agreement") with GLC which provided that GLC would be a distributor of SEVO's products in Saudi Arabia and Jordan. In 2007, SEVO and GLC amended the Agreement to provide that GLC would be SEVO's *exclusive* distributor in Saudi Arabia

1

and Jordan, and, in 2009, SEVO and GLC amended the Agreement again to grant GLC exclusive distributorship rights in an additional twenty-two countries.

In 2009, GLC learned of a proposed project in Saudi Arabia that offered a chance for GLC to sell SEVO's products. Because of certain legal and regulatory requirements under Saudi Arabian law, GLC secured the services of a local third-party vendor to prepare and present a bid for the project. However, another company, Pan Gulf Industrial Systems Co. ("Pan Gulf"), ultimately submitted the winning bid and became the project's general contractor. Fortunately for GLC and SEVO, the third-party vendor Pan Gulf used to win the contract could not meet the project's specifications. Seizing the opportunity, GLC and SEVO made a proposal directly to Pan Gulf for GLC to become Pan Gulf's vendor for the project and for Pan Gulf to use SEVO's products. Pan Gulf accepted the proposal.

According to GLC, when GLC contracts with a buyer like Pan Gulf for the sale and purchase of SEVO's products, GLC ordinarily deals with the buyer directly; GLC executes the contract with the buyer, purchases the products from SEVO, and then resells the products to the buyer for a profit. However, GLC states that SEVO convinced it to allow SEVO to contract with Pan Gulf instead. In exchange, SEVO agreed to pay GLC a $600,000 fee and to split a 5% commission GLC owed to the third-party vendor GLC originally used to submit its bid for the project. As a result of the parties' deal, SEVO entered into an agreement with Pan Gulf and Pan Gulf purchased SEVO's products directly from SEVO.

Although SEVO has now completed delivery of all of the products that Pan Gulf will use in the project and Pan Gulf has remitted payment for the same, GLC states that

SEVO has neither tendered the $600,000 fee nor paid its share of the 5% commission as promised. GLC therefore sues SEVO for breaking its promise, asserting claims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit. Additionally, GLC asserts that SEVO and FFT have been competing with GLC in Saudi Arabia and in other Middle Eastern countries where GLC is SEVO's exclusive distributor under the Agreement. GLC consequently sues SEVO for breaching the Agreement and FFT for breaching what GLC describes as some form of contractual arrangement.[1]

SEVO and FFT now move to dismiss GLC's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. SEVO and FFT aver that they are Kansas citizens who have not availed themselves of Florida's jurisdiction. Alternatively, SEVO and FFT move to transfer venue to the District of Kansas.

## II.    STANDARD OF REVIEW

A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). To determine whether the court has personal jurisdiction over a defendant, the court must engage in a two-step inquiry. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute.[2] *Id.* Second, if the

---

[1] It is not entirely clear from the Complaint's allegations how GLC became FFT's exclusive distributor—whether it was by written contract, oral agreement, or some type of quasi-contract or implied contract. The most GLC offers is that "FFT assured GLC that it was FFT's exclusive distributor for the Middle East and held GLC out to customers, potential customers and third parties as its exclusive distributor in the Middle East." (Compl. ¶ 39).

[2] In examining this first prong, a federal court must construe the forum state's long-arm statute in the same manner as the state's supreme court. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether the exercise of personal jurisdiction over the defendant comports with the Fourteenth Amendment's Due Process Clause. *Id.* The answer to this second step requires the court to examine whether the defendant has established sufficient minimum contacts with the forum state and whether exercising personal jurisdiction over the defendant would contravene traditional notions of fair play and substantial justice. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam).

The plaintiff bears the initial burden of alleging sufficient factual material in its complaint which, if accepted as true, would establish a prima facie case of personal jurisdiction over each defendant. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). A defendant may then challenge the exercise of personal jurisdiction by submitting a sworn affidavit, testimony, or other evidence refuting the plaintiff's claim of jurisdiction. *Brennan v. Roman Catholic Diocese of Syracuse NY, Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (per curiam). Upon doing so, the plaintiff bears the ultimate burden of coming forward with sufficient evidence supporting the exercise of personal jurisdiction over the defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The court must resolve any conflicts in the jurisdictional evidence presented by the parties in favor of the plaintiff. *Id.*

### III. DISCUSSION

#### A. Step 1: Florida's Long-Arm Statute

The Court first analyzes whether Florida's long-arm statute has been satisfied as to each Defendant. Florida's long-arm statute permits jurisdiction over a non-resident

defendant under two circumstances. *See* Fla. Stat. §§ 48.193(1), (2). Pertinent to this case is Florida's specific jurisdiction provision, which affords personal jurisdiction over a non-resident defendant who performs any of the acts enumerated by the long-arm statute. *See id.* §§ 48.193(1)(a)(1)–(9). In order to invoke Florida's specific jurisdiction under this provision, the plaintiff must show that the non-resident defendant performed one of the enumerated acts and that the injuries alleged in the complaint arise out of the defendant's performance of that act. *See Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1341 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

GLC contends that SEVO has submitted itself to Florida's specific jurisdiction by carrying on a business or business venture within the state and by breaching a contract within the state by failing to perform obligations required to be performed in Florida. *See* Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(7). As for FFT, GLC contends that it has submitted itself to Florida's specific jurisdiction only by carrying on a business or business venture within the state. *See id.* § 48.193(1)(a)(1). Because the Court ultimately finds that SEVO is subject to jurisdiction in the state due to its operation of a business or business venture within Florida, but that FFT is not, the Court limits its analysis accordingly.

Section 48.193(1)(a)(1) provides that a non-resident defendant submits itself to jurisdiction in Florida where the cause of action alleged by the plaintiff arises from the defendant "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." Fla. Stat. § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a

5

general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech Today*, 218 F.3d at 1249). "It is not necessarily the number of transactions, but rather the nature and extent of the transaction(s) that determine[] whether a [defendant] is carrying on a business or business venture . . . ." *Joseph v. Chanin*, 869 So. 2d 738, 740 (Fla. Dist. Ct. App. 2004). Important factors to this inquiry may include the presence and ongoing operation of an office in Florida, the number of business transactions entered into within the state, and the amount of revenue collected from Florida citizens. *See Horizon*, 421 F.3d at 1167. A single business transaction in Florida ordinarily is not enough to amount to the carrying on of a business or business venture where the transaction is not substantial in scope. *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784–86 (11th Cir. 2014) (per curiam) (collecting Florida case law and finding that a non-resident corporation did not carry on business in Florida where it engaged in a minor and isolated commercial transaction with the resident plaintiff).

In its Complaint, GLC states that SEVO and FFT carry on a business or business venture in Florida because they "do[] business in Florida through their agents and/or affiliates, SEVO Systems Latin America, LLC [("SEVO Latin America")] and SEVO Systems Brazil, LLC [("SEVO Brazil")], both of which have qualified to do business in Florida, and whose activities are substantial and not isolated." (Compl. ¶ 4). GLC also describes its own business dealings with SEVO, which include the negotiation, execution, and subsequent amendment of the Agreement. (Compl. ¶ 5). Accepting these factual allegations as true, the Court finds that GLC has carried its initial burden of establishing

6

a prima facie case of personal jurisdiction over both entities. The burden therefore shifts to SEVO and FFT to produce evidence refuting GLC's claim of jurisdiction.

To that end, SEVO and FFT have submitted the sworn declaration of Richard Niemann. Mr. Niemann states that he is the President of both SEVO and FFT. (Niemann Decl. ¶ 1). Mr. Niemann represents that "SEVO designs and manufactures fire fluid systems and equipment for sale through distributors" and that "FFT develops fire protections [sic] systems for others to sell under private labels." (*Id.* ¶¶ 3, 4). Regarding the agents and/or affiliates GLC identified in its Complaint, Mr. Niemann explains that SEVO Latin America and SEVO Brazil "are licensed distributors of SEVO's fire protection systems and equipment for sale and installation in countries other than the United States." (*Id.* ¶ 7). Mr. Niemann clarifies that SEVO Latin America and SEVO Brazil are both separate and distinct entities from SEVO and that neither SEVO nor FFT direct the daily operations of either distributor. (*Id.* ¶¶ 5, 8). Mr. Niemann additionally confirms that SEVO entered into what eventually became the exclusive distributorship relationship with GLC which forms the basis of the instant lawsuit. (*Id.* ¶ 9).

The Court finds that Mr. Niemann's declaration does not refute GLC's claim of personal jurisdiction over SEVO, but rather supports it. SEVO essentially admits that it engages in ongoing business with three separate Florida-based companies—GLC, SEVO Latin America, and SEVO Brazil—for the purpose of selling and distributing its products worldwide. SEVO represents that it has executed licensing agreements with all three entities, and the Court can reasonably presume that SEVO receives significant revenues from all three entities emanating from the use of these licenses. GLC's claim of personal jurisdiction over SEVO is further bolstered by the sworn declaration of GLC's

President, Bashar Adham, filed in opposition to Defendants' motion to dismiss. Mr. Adham states that SEVO's officers and employees traveled to his office in Orlando, Florida numerous times to negotiate the Agreement and to discuss other business matters. (Adham Decl. ¶¶ 13, 14). Mr. Adham additionally reveals that he has participated in daily telephone calls and videoconference meetings with SEVO's President from his Orlando office to discuss the parties' business. (*Id.* ¶ 15). Finally, Mr. Adham attaches a copy of the contact page from SEVO's official website, which reflects that SEVO currently maintains an office in Doral, Florida, where at least one SEVO employee works. (Adham Decl. Ex. 2).

From the evidence produced by both GLC and SEVO, the Court concludes that SEVO carries on a business or business venture in Florida. SEVO maintains an office and at least one employee in Florida, has entered into licensing agreements with at least three separate Florida-based companies (from which SEVO presumably garners significant income), frequently travels to Florida to conduct business, and communicates directly with Florida citizens on a daily basis for the purpose of conducting business. Since there is no dispute that GLC's alleged injuries in this case arise from SEVO's business conduct in Florida—that is, SEVO's alleged breach of the exclusive distributorship Agreement with GLC—SEVO has submitted itself to Florida's specific jurisdiction pursuant to § 48.193(1)(a)(1).

As for FFT, however, the Court finds that Mr. Niemann's declaration adequately refutes GLC's basis for exercising personal jurisdiction over it. Mr. Niemann affirms that FFT is a separate and distinct entity from SEVO, that FFT has never had a contractual relationship with GLC, and that FFT has never directed the daily operations of any of the

8

distributors with which SEVO does business.  (Niemann Decl. ¶¶ 2, 8, 11).  The burden therefore shifts back to GLC to produce sufficient evidence supporting its claim of personal jurisdiction over FFT.

GLC ultimately fails to prove its position that FFT carries on a business or business venture in Florida.  While GLC claims that FFT and SEVO are related in some way[3] and that SEVO and FFT are controlled by the same individuals, this alone is not enough to find that FFT carries on a business or business venture in Florida.  *See, e.g.*, *Heidbrink v. ThinkDirect Mktg. Grp., Inc.*, No. 8:14-cv-1232-T-30AEP, 2014 WL 3585698, at *3 (M.D. Fla. July 21, 2014) (holding that common ownership and financial control are insufficient on their own to submit a related non-resident company to Florida's jurisdiction); *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011) (stating the general rule that a non-resident subsidiary is not automatically subject to jurisdiction in Florida merely because its parent is); *Am. Express Ins. Servs. Eur. Ltd. v. Duvall*, 972 So. 2d 1035, 1040 (Fla. Dist. Ct. App. 2008) ("[J]urisdiction over a parent company does not, without more, confer jurisdiction over the subsidiary.").  Moreover, the only piece of evidence GLC provides possibly speaking to FFT's business conduct in Florida is a contract FFT executed with a company located in Saudi Arabia wherein FFT identifies GLC as its exclusive distributor in the Middle East and Africa.  (Compl. Ex. F).  However, GLC provides no information on how or where FFT's agreement to make GLC its exclusive distributor in these regions, assuming such an agreement in fact exists, was consummated.  Finally, to the extent GLC might argue

---

[3]   GLC is less than clear on how FFT and SEVO are related, if at all, alleging that "FFT is a subsidiary of SEVO, or alternatively they have common ownership and management or are otherwise affiliated companies." (Compl. ¶ 3; Adham Decl. ¶ 4).

9

that the SEVO officers and employees who visited and contacted GLC in Florida were also acting as officers and employees of FFT and were contacting GLC to conduct FFT-related business, the record in this case demonstrates that such contact was isolated to GLC. There is no evidence showing that FFT maintained an office or employees in Florida, engaged in business with any other Florida-based company, or received any revenue from GLC or any other Florida resident.

In the end, the most the Court is able to glean from this evidence is that FFT had minor and isolated business contact with Florida. Such contact is not enough to constitute the carrying on of a business or business venture within the state. *See RMS Titanic*, 579 F. App'x at 784–86. Accordingly, GLC fails to carry its burden and the Court will dismiss FFT from this action for lack of personal jurisdiction.

### B. Step 2: Due Process Analysis

Since GLC has produced sufficient facts and evidence showing that SEVO has submitted itself to Florida's specific jurisdiction under the long-arm statute, the Court turns next to whether exercising personal jurisdiction over SEVO comports with the Fourteenth Amendment's Due Process Clause. The Fourteenth Amendment requires that SEVO have sufficient minimum contacts with Florida and that the exercise of jurisdiction over SEVO will not contravene traditional notions of fair play and substantial justice. *See Future Tech. Today*, 218 F.3d at 1249.

#### 1. Sufficient Minimum Contacts

When examining whether sufficient minimum contacts exist to warrant personal jurisdiction over a non-resident defendant, the district court must decide whether the defendant "purposefully directed" its activities at the forum state's residents. *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984)).  A defendant purposefully directs its activities to the residents of the forum state when there is "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.* at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "[W]ith respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

However, a defendant does not purposefully direct his activities to the forum state or purposely avail himself of the forum state's jurisdiction where his contacts with the forum state are "random," "fortuitous," or "attenuated."  *Id.* at 475 (quoting *Keeton*, 465 U.S. at 774 and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).  The "unilateral activity of another party or a third person" also does not suffice to establish that a non-resident defendant directed its activities to the residents of the forum state.  *Id.* (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

It is clear from the record that SEVO has sufficient minimum contacts with Florida to demonstrate that it has purposefully availed itself of Florida's jurisdiction.  SEVO maintains an office and at least one employee in Florida and has entered into licensing agreements with at least three separate Florida companies.  Additionally, SEVO's officers and employees have frequently traveled to Florida over the years to conduct business,

and have regularly communicated with Florida residents via telephone, email, and videoconference for the purpose of conducting business. Such contacts are more than enough to satisfy the Fourteenth Amendment. *See, e.g.*, *Baker Elecs., Inc. v. Pentar Sys., Inc.*, 219 F. Supp. 2d 1260, 1264–65 (M.D. Fla. 2002) (finding sufficient minimum contacts where the non-resident defendant traveled to Florida to negotiate joint venture with the Florida plaintiff and subsequently communicated with the plaintiff in Florida via email and facsimile in furtherance of the joint venture); *Apsoft, Inc. v. WebClay*, 983 So. 2d 761, 767 (Fla. Dist. Ct. App. 2008) (finding sufficient minimum contacts where the non-resident defendant entered into oral agreement with the Florida plaintiff and subsequently communicated telephonically with the plaintiff's employees located in Florida).

### 2. Fair Play and Substantial Justice

Although a defendant has sufficient minimum contacts with the forum state, traditional notions of fair play and substantial justice may nevertheless warrant declining jurisdiction over a non-resident defendant under certain circumstances. *See Burger King*, 471 U.S. 476–77. When determining whether personal jurisdiction over the defendant would comport with traditional notions of fair play and substantial justice, courts should consider:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292 (internal quotation marks omitted)). Only where the exercise of jurisdiction would "make litigation 'so gravely difficult and inconvenient'" such that the non-resident defendant is placed "'at a severe

disadvantage' in comparison to his opponent" will fair play and substantial justice counsel against the exercise of jurisdiction. *Id.* at 478 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972) and *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Ultimately, the non-resident defendant who has purposefully directed its activities to the forum state's residents "must present a compelling case" as to why exercising jurisdiction would be unreasonable and why alternative avenues such as changing venue or applying the forum state's choice-of-law rules would be insufficient to address the burden alleged. *Id.* at 477.

      As GLC aptly observes in its response to SEVO's motion to dismiss, SEVO makes no argument as to why exercising jurisdiction over it would offend traditional notions of fair play and substantial justice. And the Court finds no indication in the record which would support such a position. SEVO routinely does business in Florida with Florida companies, frequently sends its officers and employees into Florida to conduct its business, and maintains an office in Florida with at least one employee. Florida therefore has a substantial interest in the adjudication of this dispute, and GLC, as a Florida corporation, has a substantial interest in obtaining convenient and effective relief here, where its causes of action are alleged to have arisen. Moreover, there is no reason to believe that this Court is less capable of adjudicating this case than any other court; not exercising jurisdiction over SEVO would therefore likely increase, rather than decrease, any burdens on the interstate judicial system by forcing GLC to commence its lawsuit anew in another forum. As a result, the Court finds that its exercise of jurisdiction over SEVO comports with the traditional notions of fair play and substantial justice embodied

within the Fourteenth Amendment's Due Process Clause. SEVO's motion to dismiss for lack of personal jurisdiction will be denied.

### C. SEVO's Alternative Motion to Transfer Venue

In the event the Court determines that the exercise of personal jurisdiction is proper, SEVO alternatively moves to transfer venue to the District of Kansas pursuant to 28 U.S.C. § 1404(a). SEVO contends that the District of Kansas is the most convenient forum for this dispute and is where much of the conduct at issue transpired.

Section 1404(a) authorizes a district court to transfer any civil action to any other district court where the action might have been brought, so long as the transfer serves the convenience of the parties and witnesses and is otherwise in the interest of justice. Notwithstanding, it is axiomatic that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).

The Court is unpersuaded by the reasons SEVO cites in support of the transfer it proposes. While SEVO and its witnesses may be located in Kansas, GLC and its witnesses are located here in Florida. And while SEVO contends that the contractual obligations at issue in this case were consummated and performed in Kansas, GLC alleges that they arose here. Transferring this case to a Kansas district court would do nothing more than shift the burden of litigation from SEVO to GLC. GLC's choice of forum is consequently not clearly outweighed by the considerations SEVO advances. The Court will therefore deny SEVO's alternative motion to transfer venue as well.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART**. This action is **DISMISSED** as to Defendant, Fire Fluid Technologies, Inc., for lack of personal jurisdiction. The motion is otherwise denied.

2. The Clerk of Court is **DIRECTED** to terminate Defendant, Fire Fluid Technologies, Inc., from the docket.

3. Defendant, SEVO Systems, Inc., has **fourteen (14) days** from the date of this Order to answer Plaintiff's Complaint.

**DONE AND ORDERED** in Orlando, Florida on April 7, 2017.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record